# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DENNIS A. ZIEMANN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4: 16 CV 1198 RWS / DDN ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Dennis A. Ziemann for disability insurance benefits during the period from July 21, 2009 to December 31, 2010 under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434. The action was referred to the undersigned United States Magistrate Judge for review and a recommended disposition under 28 U.S.C. § 636(b).

For the reasons set forth below, the undersigned recommends that the decision of the administrative law judge (ALJ) be affirmed.

## I.  BACKGROUND

Plaintiff was born in 1955. (Tr. 33.) He alleged a July 21, 2009 onset date, at which time he was 54 years old, and alleged disability due to psoriatic arthritis, osteoarthritis, and limited mobility from prior surgeries. (Tr. 125, 163.) His application was denied, and he requested a hearing before an ALJ. On March 6, 2015, following a

---

[1] The Hon. Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted in her official capacity for Carolyn W. Colvin as the defendant in this action. 42 U.S.C. § 405(g) (last sentence).

hearing, an ALJ found that plaintiff was not disabled under the Act. (Tr. 12-17.) On May 17, 2016, the Appeals Council denied his request for review. (Tr. 1-3.) Thus, the ALJ's decision stands as the final decision of the Commissioner subject to judicial review. (Tr. 1-4.)

## II.  MEDICAL AND OTHER HISTORY

In July 2009, plaintiff had pain and swelling in the small joints of his upper extremities due to rheumatoid arthritis, which was exacerbated by stress. He had a rash on the elbows, knees, and distal lower extremities. Review of systems at that time noted headache, muscle pain, hand swelling, joint pain, and neck and back pain. He was diagnosed with psoriatic arthritis and started on methotrexate, a chemotherapy agent and immune system suppressant used to treat rheumatoid arthritis. (Tr. 206-07.)

In August 2009, plaintiff was seen for follow up. He was stiff in the morning and complained of pain and swelling in his hands. His skin rash was improving. He reported no problems with his medications. In October 2009, he had pain in the hands, wrists, toes, neck and back but no swelling. He reported that his joints were much better with methotrexate and that his psoriasis was improved. Stephen Ross, M.D., his rheumatologist, evaluated his disease as 1/10 on the "Global Assessment of Disease Activity" Scale. (Tr. 212-14.)

In February 2010, plaintiff reported that the methotrexate had helped his psoriasis and arthritis without adverse effects. He was exercising three times per week and had some lower back pain. (Tr. 216.) In May 2010, records again noted morning stiffness. He had pain with work but "not bad." (Tr. 218, 264.) In August 2010, records noted morning stiffness, fatigue, and pain in his hands, right shoulder, neck and low back. (Tr. 220.)

In November 2010, his hands were doing well and his psoriasis was almost gone. He had low back pain without radiation that had been more painful in the past two months. He also had neck pain. Records further noted x-rays revealing lumbosacral disc

space narrowing in the low back, as well as osteophytes, or bony outgrowths associated with the degeneration of cartilage at joints. (Tr. 222-23.)

In April 2013, records noted backache. (Tr. 355.) An April 2013 MRI of plaintiff's lumbar spine revealed no recurrent disc herniation and minimal degenerative changes in plaintiff's spine. (Tr. 377-78.) He underwent steroid injections for back pain in May 2013 and August through November 2014. (Tr. 275, 278, 285, 291, 322.) In July 2014, he had morning stiffness and complained of joint pain and swelling. However, an a general examination indicated that his joints showed no swelling, no tenderness, normal range of motion, and no instability; he was in no acute distress; he exhibited normal muscle strength and no atrophy; and he had normal mental affect. (Tr. 235.)

In a February 18, 2015 letter, treating physician John Ellena, M.D., an internist, stated that plaintiff was diagnosed with degenerative disc disease prior to May 2007, and in one sentence that in his opinion plaintiff was disabled as a result of back pain. (Tr. 326). Dr. Ellena also provided a source statement regarding plaintiff's limitations prior to December 31, 2010, indicating limitations including standing for one hour, walking for one hour, sitting for one hour, and no bending/stooping, lifting, or carrying. (Tr. 327-28.)

**ALJ Hearing**

On February 25, 2015, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 28-63.) He previously owned and managed a hair salon and has also worked as a restaurant host. (Tr. 35-38.)

In 2009, burning pain from his psoriatic arthritis started down his right hip and leg. His pain at that time ranged from 6 to 8 on a ten-point scale. He was limited to lifting fifteen pounds. He took methotrexate for many years until 2014 and experienced diarrhea as a side effect. (Tr. 40-42.)

He underwent a lot of physical therapy and exercised a couple of times a day. He has had nine nerve innervations in the past eight months that helped a little with walking, although he still has acute pain. He is currently limited to lifting ten pounds. He can walk

- 3 -

on a flat surface although walking up or down hill is difficult.  He can walk on a flat surface for one hour before he needs to sit down, and rarely walks for more than one hour at a time.  He has difficulty tying his shoe laces and does not wear shoes with laces.  He cannot open jars.  (Tr. 44-47.)

He exercises for 15 to 20 minutes on a typical day.  He brushes his teeth and drinks coffee.  He does errands and "piddles around the house."  (Tr. 48.)  He used to do heavy gardening six or seven years ago but cannot do that anymore.  He can wash dishes but cannot vacuum or make a bed.  He sits and reads a lot.  He goes to the grocery store every day and can prepare meals.  He goes out to dinner twice a week with friends.  He no longer attends theater because he cannot sit for two to three hours at a time.  He stopped doing volunteer work in 2008 or 2009, although he volunteered and assisted at a women's fashion show for about two hours about one year ago.  He is able to pay bills and manage his money.  If he is having a bad day he must cancel his social engagements and entertainment.  He has had to cancel a lot of events.  He sold his sports car in September 2014 because it was too difficult to get in and out of it because it was low to the ground.  (Tr. 47-52.)

A vocational expert also testified at the hearing.  The VE characterized plaintiff's prior work as a host and a manager/hairdresser as light and skilled or semi-skilled.  The VE testified there were no transferable skills to light or sedentary positions. The VE testified that if plaintiff required 15-minute breaks beyond normal breaks, it would preclude employment.  The VE further testified that if plaintiff needed to miss four or more work days a month, he could not sustain employment.  (Tr. 54-61.)

### III.   DECISION OF THE ALJ

On March 6, 2015, the ALJ issued a decision finding that plaintiff was not disabled under the Act during the period from July 21, 2009 to December 31, 2010.  (Tr. 12-17.)  The ALJ found that plaintiff had not engaged in substantial gainful activity during the period from July 21, 2009, his alleged onset date, through December 31, 2010, his date

last insured.  (Tr. 14.)  The ALJ found that plaintiff had the impairments of degenerative disc disease of the lumbar spine and psoriatic arthritis.  (Tr. 14.)  At Step Two, the ALJ found that while plaintiff's degenerative disc disease and psoriatic arthritis were medically determinable impairments, or impairments that could be demonstrated by medically acceptable clinical and laboratory diagnostic techniques, these impairments were not severe through December 31, 2010, his date last insured.  (Tr. 12, 14, 147.)  The ALJ ended the inquiry at Step Two of the five-step evaluation process and therefore found that plaintiff was not disabled under the Act.  (Tr. 17.)

## V.  GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole.  Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Id.  In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision.  Id.  As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently.  See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months.   42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942.  A five-step regulatory framework is used to

determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps One through Three require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). Id. § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to his PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. Id.; 20 C.F.R. § 404.1520(a)(4)(v).

## V.   DISCUSSION

Plaintiff argues the ALJ erred in (1) finding that he did not have any severe impairments at Step Two of the sequential evaluation process; and (2) in discrediting his subjective complaints at Step Two. The undersigned disagrees.

### 1.   Step Two Analysis

Plaintiff argues the ALJ erred in finding that he had no severe impairment at Step Two of the sequential evaluation process. In support, he argues the ALJ rejected the opinion of his treating physician even though the initial agency determination found he had the severe impairment of degenerative disc disease. In support, plaintiff cites to his own testimony at the hearing, the opinion of Dr. Ellena, and his treatment records.

Plaintiff argues the ALJ did not sufficiently account for an x-ray revealing significant spinal conditions.

Plaintiff also argues the ALJ mischaracterized his testimony in several respects. He contends that, while the ALJ noted activities at a charity fashion show, in fact he testified that he volunteered for only two hours brushing hair and putting on lipstick, and that prior to 2008 he used to volunteer a great deal. Plaintiff also contends the ALJ erroneously stated that he walks his 50-pound dog while in fact he testified that he walks his dog but does not hold the leash. (Tr. 33-34.)

At Step Two of the sequential evaluation process, the ALJ must evaluate the claimant's "severe" impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is an impairment that significantly limits a claimant's ability to do work-related activities. 20 C.F.R. § 404.1520(c). An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. Kirby v. Astrue, 500 F.3d 705, 707-08 (8th Cir. 2007)). The impairment must also be expected to result in death, or have lasted, or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. The severity standard is not an onerous one; but it is not a toothless standard either. Kirby, 500 F.3d at 708. The Eighth Circuit has upheld the Commissioner's finding that a claimant has failed to prove that an impairment is severe. Id.; Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003); Simmons v. Massanari, 264 F.3d 751, 755 (8th Cir. 2001); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997); and Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996)). If a claimant has no severe impairment, the sequential evaluation process terminates at Step Two and the claimant is found not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The burden of proving a severe impairment is on the claimant. Kirby, 500 F.3d at 707-08.

Applying this standard, the record contains substantial evidence that plaintiff's impairments were not severe by December 31, 2010. Specifically, when seen for a hernia in October 2007, prior to his alleged onset date of disability, plaintiff told a nurse

practitioner that he was not experiencing any rashes, or joint or bone symptoms. (Tr. 370-72.) X-rays of his hands and feet in July and October 2009 were normal. Plaintiff told Dr. Ross, his rheumatologist, that his joints were "much better" on methotrexate. (Tr. 207, 214.) On February 25, 2010, plaintiff reported to Dr. Ross that the methotrexate has helped his psoriasis and arthritis without adverse side effects. He was exercising three times per week and had some chronic low back pain. (Tr. 216.) In May 2010, Dr. Ross noted that plaintiff's joint exam was normal. He had "pain with work but not bad" and denied medication problems. (Tr. 218.) In August 2010, plaintiff reported he had mild pain in his hands, right shoulder, and neck, as well as moderate pain in his lower back. His joint exam was normal. He denied medication problems. (Tr. 220-21.)

On November 18, 2010, shortly before his date last insured, plaintiff's hands were "doing well." He had low back pain without radiation which had been more painful in the past two months. He had neck pain. His psoriasis was almost gone and he denied medication problems. (Tr. 222-23.) Plaintiff's improvement on methotrexate is significant, because an impairment that is amenable to treatment cannot be disabling. Cf. Bernard v. Colvin, 774 F.3d 482, 488 (8th Cir. 2014) (impairments that are controllable or amenable to treatment do not support a finding of total disability).

Although plaintiff testified at his hearing that he had experienced diarrhea as a side effect of methotrexate, his testimony was not borne out by the record. Plaintiff routinely denied having diarrhea during the relevant time period. (Tr. 42-43, 206, 215, 219, 221, 223, 265.) He also repeatedly said that he was not having problems with his medication and continued to report that his medication was not causing him any problems even after his date last insured. (Tr. 212, 214, 216, 218, 220, 222, 241, 232, 238, 264.) Plaintiff's methotrexate, therefore, does not appear to have caused diarrhea as a side effect during the relevant time period.

In addition, other record evidence demonstrates that plaintiff's psoriatic arthritis was not a severe impairment. For instance, plaintiff described very low levels of pain during the relevant time period and described the pain he experienced when working as

"not bad." (Tr. 218, 220, 264.) He also said that he was exercising three times a week in February 2010 and reported that he continued to enjoy a moderate level of activity in March 2011, just after his date last insured. (Tr. 216, 363). Plaintiff also stated in his application for benefits that he did not have to make changes to his work activity due to his conditions until November 2012. (Tr. 163-64.) As this was well after his date last insured, it suggests that plaintiff's impairments did not impact his ability to work through December 31, 2010. Accordingly, the relevant evidence, as a whole, did not show that plaintiff's psoriatic arthritis was a severe impairment prior to his December 31, 2010 date last insured.

The record evidence also shows plaintiff's degenerative disc disease was not a severe impairment prior to December 2010. Plaintiff reported to Dr. Ross in February 2010 that he was exercising three times per week. He described himself as "retired," not disabled, just after his date last insured in March 2011. (Tr. 216, 363.) Furthermore, the owner of the restaurant who employed plaintiff in 2012 stated in correspondence that sometime after August 2012 plaintiff's back pain began to impact his performance and he started needing additional break time and time off. (Tr. 143.) This does not demonstrate a severe back impairment prior to December 2010.

Plaintiff contends the ALJ mischaracterized some of his daily activities. He alleges that the ALJ failed to consider that he walked his dog without holding a leash and volunteered at a fashion show for only two hours. The ALJ did not specifically discuss these aspects of plaintiff's daily activities in her decision. However, the ALJ noted significant other activities plaintiff could perform nearly five years after his date last insured. (Tr. 16.) The ALJ noted that plaintiff still washed the dishes and did all of the cooking for the household. (Tr. 16, 48-50.) She also noted that plaintiff could still drive and did not sell his sports car until just five months before his hearing when it became too difficult to get out of the car. (Tr. 16, 48, 52.) Plaintiff also testified that in 2009 he grocery-shopped every day and was responsible for various household chores. (Tr. 48-49.) See Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) (acts such as cooking,

vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain). The ALJ, therefore properly found that plaintiff's degenerative disc disease of the lumbar spine was not severe through December 31, 2010.

Plaintiff also argues that the ALJ erred in evaluating his medical records because she failed to account for a November 2010 x-ray that showed significant lumbar spinal conditions. The ALJ did not specifically discuss this x-ray in her decision, but was not required to do so. (Tr. 223.) Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) (although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted). In any event, it is unlikely that the x-ray would have changed the outcome of the ALJ's decision in light of an April 2013 MRI of plaintiff's lumbar spine, which the ALJ specifically discussed, that showed no recurrent disc herniation and minimal degenerative changes in plaintiff's spine. (Tr. 16, 377-78.) Moreover, since plaintiff testified that his back condition had worsened since 2009, it is unclear how the November 2010 x-ray would have changed the outcome of the ALJ's decision. (Tr. 40.) The ALJ, therefore, did not err in not discussing the November 2010 x-ray.

Plaintiff also argues that the ALJ erred in discounting the opinion of his internist, Dr. Ellena, and failed to provide a sufficient reason for doing so. The undersigned disagrees.

The ALJ stated that she discounted Dr. Ellena's opinion because she found that his opinion was inconsistent with plaintiff's own description of his daily activities. (Tr. 16-17, 326, 238.) This is an appropriate reason to discount a medical source opinion. Medhaug, 578 F.3d at 805 (ALJ properly discounted the treating physician's opinion because it was inconsistent with the claimant's own description of his daily activities). Additionally, Dr. Ellena's opinion was inconsistent with the record evidence, including plaintiff's neurological examinations, his April 2013 MRI, his own statements regarding his limitations, his daily activities, and other evidence discussed above. 20 C.F.R. §

404.1527(c)(4) ("[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").  Dr. Ellena's opinion and treatment notes are also from well after the relevant time period.  Further, his opinion concerns the ultimate issue of disability, which enjoys no special significance under the regulations. 20 C.F.R. § 404.1527(d) (an opinion that a claimant is "disabled" or "unable to work" is not afforded any special significance).  The ALJ, therefore, did not err in discounting Dr. Ellena's opinion.

Plaintiff finally argues that the ALJ erred in finding that his degenerative disc disease was not severe because it contradicted the finding of the State agency disability determination service (DDS), that his degenerative disc disease was severe. (Tr. 67). Plaintiff is incorrect.

Although the DDS used the word "severe" in describing plaintiff's degenerative disc disease (*id.*), the conclusion it reached on plaintiff's application does not appear to indicate that the agency actually found it severe.  According to the initial determination, DDS found the evidence insufficient to evaluate plaintiff's claim.  It also stated in its Notice of Disapproved Claim that the evidence was insufficient as of that time, and that it did not show a severe impairment. (Tr. 66-68, 72.)  Thus, DDS does not appear to have found plaintiff's degenerative disc disease to be severe.

Even assuming DDS found plaintiff's degenerative disc disease to be severe, the ALJ was free to make findings that contradicted those findings.  20 C.F.R. § 404.953(a) ("[t]he [ALJ] shall issue a written decision that gives the findings of fact and the reasons for the decision.  The [ALJ] must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record"); Hearings, Appeals, and Litigation Law Manual § I-2-2-1  (citing 20 C.F.R. § 404.946(a) ("[i]n addition to the issues that are unfavorably decided, an ALJ may also reconsider issues previously decided in the claimant's favor if evidence causes the ALJ to question a favorable determination or if there was an error of law")).  The ALJ made her own findings based on the record

evidence before her, and that included evidence not before the DDS. The ALJ, therefore, lawfully found plaintiff's impairments to be non-severe during the relevant time period.

### 2. Credibility

Plaintiff next argues the ALJ erred in assessing his credibility. He contends the ALJ failed to address his hearing testimony that he needed to put his hands in ice water and paraffin wax in order to help relieve pain, that he used a cane at times to relieve his back pain, that he has difficulty walking unless the ground is flat, that he needs to sit down after one hour, and that he needs to lie down with weather changes.

Although a claimant's complaints are generally evaluated at Step Four of the sequential evaluation process where a claimant's residual functional capacity is assessed, a claimant's complaints are also relevant at Step Two. Social Security Ruling 96-3p states:

> In determining the severity of an impairment at step 2 . . . evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities . . . [a] determination that an individual's impairments is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities. Because a determination whether an impairment(s) is severe requires assessment of the functionally limiting effects of an impairment(s), symptom-related limitations and restrictions must be considered at this step of the sequential evaluation process, provided that the individual has a medically determinable impairment(s) that could reasonably be expected to produce the symptoms.

1996 WL 374181, at *2.

The ALJ found, as set forth earlier, that plaintiff's psoriatic arthritis and degenerative disc disease were medically determinable impairments. The ALJ found these impairments, however, were not severe, in part, because plaintiff's statements

regarding the effects of his impairments were not entirely consistent with the record evidence. (Tr. 15-17.)

Although the ALJ did not address every complaint raised by plaintiff at his hearing, she was not required to, as discussed above. Wildman, 596 F.3d at 966 (while the ALJ is required to develop the record fully and fairly, she is not required to discuss every piece of evidence submitted). The ALJ addressed the matters related to plaintiff's complaints. For example, as to his need to put his hands in wax and then in cold water to relieve pain from his psoriatic arthritis, the ALJ discussed the fact that plaintiff had reported very low levels of pain during the relevant time period. (Tr. 16.) The ALJ also noted that Dr. Ross, his rheumatologist, evaluated his disease as very low on the "Global Assessment of Disease Activity" Scale. (Tr. 16, 212-14.) The ALJ also noted that plaintiff testified that he had not needed to sell his sports car due to his back pain until five months before his hearing. (Tr. 16.) This evidence does not suggest that plaintiff's back pain was so pervasive during the relevant time period that he would have needed to use a cane.

The ALJ also noted plaintiff's testimony that he was able to walk his 50-pound dog, as discussed above. (Tr. 16, 34-35.) Plaintiff did not testify that he used a cane for this activity. Plaintiff also described various activities that he completed during a typical day, including performing exercises, doing errands, and "piddling around the house." Plaintiff's testimony described an individual who maintained a fairly active lifestyle, as noted by the ALJ. (Tr. 16.) The ALJ, therefore, did not err in evaluating plaintiff's subjective complaints on this record. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (ALJ's credibility findings were entitled to deference because they were based on multiple valid reasons).

In sum, substantial evidence supports the ALJ's finding that plaintiff's psoriatic arthritis and degenerative disc disease were not severe prior to the December 2010 expiration of his date latest insured. This was true despite any evidence demonstrating that his conditions worsened after December 2010. See Turpin, 750 F.3d at 994-95 (a decline in claimant's health after the date last insured does not prove disability prior to the

date last insured). Therefore, the ALJ's finding of no severe impairment at Step Two should be affirmed.

## VI.  RECOMMENDATION

For the reasons set forth above, it is the recommendation of the undersigned that the final decision of the Commissioner of Social Security be affirmed.

The parties are advised that they have 14 days to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

/s/ David D. Noce<br>
**UNITED STATES MAGISTRATE JUDGE**

Signed on October 23, 2017.